Joseph A. Suozzi, J.
The plaintiffs in this action are residents and taxpayers of Union Free School District No. 17, Town of Oyster Bay, Hicksville, New York. The defendants are the Board of Education of District No. 17, the Hicksville Free Public Library and its members, and the sellers of property purchased by the defendant library.
The papers reveal that in February, 1962 the library purchased and took title to a parcel of real property from the defendants John E. Christ and Anna B. Christ. The purchase price was $24,000, on which a down payment of $7,000 was made, and a purchase-money mortgage at 6% interest for a term of 10 years was executed by the library for the balance of $17,000. Of the $7,000 down payment, $6,000 came from fines and fees and the balance of $1,000 from budgetary funds.
No approval by the electors of the district for this purchase was sought or given. A referendum held by the district on December 12, 1962 to authorize the school district to purchase the parcel from the library resulted in a rejection by the electors.
Briefly stated, the plaintiffs question (1) the authority of the library to purchase property without prior approval of the voters of the school district, and (2) the power of the library to execute a purchase-money mortgage, which they contend is violative of the Local Finance Law. The complaint, which was drafted prior to the referendum of December 12, 1962, is also *521 directed to the propriety of the proposition submitted, but in view of the rejection by the voters, there is no need to consider any of the issues pertaining thereto. The motion before the court, made by defendants Hicksville Free Public Library and the members of its board of trustees, is for summary judgment dismissing the complaint.
The Hicksville Free Public Library was originally established by action of the voters of Union Free School District No. 17 pursuant to section 255 of the Education Law and is managed by five trustees who, pursuant to section 260 of the Education Law, are given ‘1 all the powers of trustees of other educational institutions of the university as defined in this chapter.”
Section 261 of the Education Law requires the trustees to apply to the Regents for a charter. In accordance with this provision a provisional charter was obtained from the Regents on December 31, 1926, and an absolute charter on September 20, 1946.
The library is in the main supported by taxes levied on the residents of the school district.
It is the defendant library’s contention that a public library is a distinct corporate entity created by the Board of Regents and not by the municipality within which it is situated, and that it is not subject to the limitations and restrictions imposed on the Board of Education by the Local Finance Law and other applicable statutes. It contends, moreover, that subdivision 6 of section 226 of the Education Law expressly authorizes a public library to buy, mortgage or lease property.
It is clear that the Board of Education and the school district could not purchase the property without prior approval. The statutes so provide (Education Law, § 1709, subd. 6; § 255). It is equally clear that the Board of Education is not permitted to mortgage property, and that any pledge of the district’s credit must be in accordance with the Local Finance Law.
Section 255 of the Education Law, which provides for the establishment and maintenance of a library by a school district, provides among other things that the electors of a school district “ may determine by a majority of the voters present and voting on the proposition to levy a tax to be collected in installments for the purchase or condemnation of a site and the erection thereon of a library building or the erection of a library building on land acquired otherwise than by-purchase of condemnation, or for the purchase of land and a suitable building thereon and make necessary alterations and additions and equip such building for use as a library.” As this section is interpreted (4 Op. St. Comp., 1948, No. 3456, pp. 609, 611) “No mention can be *522 found in the law of a power residing in the trustees to acquire property, in either their name or the name of the library corporation, with taxes raised by the district for library purposes * * * although the trustees are given the power to direct the expenditure of the tax moneys, property acquired thereby is owned by the school district.” A similar interpretation was rendered (9 Op. St. Comp., 1953, No. 6448, pp. 428, 429), wherein it was held that if bonds be issued to finance the purchase of a library site, “ the board of education must acquire the sites in the name of the school district ’ ’.
Admittedly subdivision 6 of section 226 empowers institutions subject to its provisions to “ Buy, sell, mortgage, let and otherwise use and dispose of its property”. There is no dispute that a public library is such an institution. However, it does not follow that the limitations imposed by section 255 of the Education Law and by the Local Finance Law have thereby been lifted. Any construction which would remove these restrictions would provide judicial sanction for the Board of Education to do indirectly that which it cannot accomplish directly. Such an interpretation, the court finds, would be violative of the legislative intent.
Section 226 pertains primarily to the management of educational institutions which are incorporated by the Board of Regents pursuant to section 216 of the Education Law and which are private in their origin and ownership and derive their funds in the main from private sources. These institutions are to be distinguished from those which are public or governmental in nature and are supported by funds derived from taxation. However, a public library, in addition to moneys raised by the school district by taxation, is authorized to and does receive gifts and funds from other sources, as do the private institutions incorporated by the Board of Regents pursuant to section 216.
In providing for incorporation of a public library by the Board of Regents, it is obvious that the Legislature has recognized the educational character and functions of a public library and the desirability of placing it under the supervision of the Board of Regents. However, this does not alter the fact that a public library owes its existence to the electors of the school district and not to the Board of Regents. Providing for incorporation by the Board of Regents does not serve to convert a public library from a corporate entity governmental in origin and development into a private one. While it may be that public libraries, by virtue of their growth and development, arc entitled to separation and independence from the school district, until the Legislature clearly and expressly provides for this *523 separation and independence, a public library continues as an agency of the school district (9 Op. St. Comp., 1953, No. 6012, pp. 52, 53).
The court finds that all that was intended by the Legislature by subdivision 6 of section 226 was to authorize purchases by the library of property with moneys other than those received by taxes. To the extent that the property was purchased by moneys raised by taxes, the purchase was unauthorized.
' It is undisputed that $6,000 of the down payment of $7,000 was paid out of fines and fees. The State Comptroller has ruled that the balance remaining in a library fund or anticipated library revenues cannot be offset against the amount finally approved by the voters for library purposes, although it would be entirely appropriate for the district voters to take such amounts into consideration in fixing the levy for library purposes (9 Op. St. Comp., 1953, No. 6012, pp. 52, 53, supra). The budget for the year in which the purchase was made is not before the court, and it cannot be ascertained whether or not the anticipated revenues, such as fines and fees, had been taken into account in fixing the tax levy for that year.
However, it is also undisputed that $1,000 of the money used for the down payment came from the budgetary appropriation, and to that extent the purchase was clearly unauthorized and invalid.
The court also finds that where a public library has other assets which could be used for the payment of a mortgage, a mortgage would be authorized by this section. Rental income from library property which is sufficient to pay the mortgage payments would be deemed such assets for the purposes of this section. However, a mortgage is to be distinguished from a bond, which is a pledge of credit. A library has no authority to pledge credit (9 Op. St. Comp., 1953, No. 6056, p. 95). The right to give a mortgage does not sanction a bond. A mortgage of real property does not imply a covenant for the payment of the sum intended to be secured by the mortgage (Beal Property Law, § 249). Clearly, then, the bond which was executed with the purchase-money mortgage was unauthorized and invalid.
In view of these findings, defendant’s motion for summary judgment under the present state of facts would have to be denied, and the plaintiffs would be entitled to judgment declaring said purchase invalid and directing a reconveyance of the property and a return of the down payment and any mortgage payments made, less any sums received by the library as rent and other appropriate adjustments. However, on the papers submitted the court cannot find that the purchase price of the *524 property was in excess of the market value, and there is no evidence that the trustees of the library, did not ..do.,the.acts complained of with the best interests of the district." in mind. The court, therefore, will defer granting summary judgment to plaintiffs if the defendants library and Christ are prepared-to do the following: (1) defendants Christ return so much of the down payment as came from tax moneys, to wit, $1,000, and that portion of the fines and fees, if any, which were offset in the budget in computing the tax levy for that year; (2) defendants Christ accept a mortgage, not containing a covenant to pay, without a bond, for the full purchase price-less that portion of the down payment which need not be refunded in accordance with this decision; and (3) defendants Christ and the library fix the periodic mortgage payments at a level that will permit the rental income from the property to satisfy the mortgage obligation.
In the event that these terms are not or cannot be complied with by defendants within 30 days of the date of the order to be entered herein, then plaintiffs may have judgment directing a reconveyance as aforesaid. If, however, defendants are able to make the arrangements just suggested, then upon proof by affidavit that it has been done, this court will sign an order granting summary judgment dismissing the complaint.